The Chancellor.
In eighteen hundred and thirty-six, during the rage for speculation in real estate, the complainant sold his farm, in the neighborhood of Paterson, to the defendant, John McCarty, for thirteen thousand dollars; the conveyance was made on the twenty-seventh of April, eighteen hundred and thirty-six, and to secure so much of the consideration money, the defendant executed to the complainant a bond and mortgage, in the same day, for ten thousand eight hundred and twenty-two dollars and fifty cents, on the premises, payable in the following manner: one thousand dollars on the twenty-ninth of September, then next; two thousand dollars on the first of May, eighteen hundred and thirty-seven, and the residue on the first of May, eighteen hundred and thirty-eight, with interest from the first of May next after the date of the bond, paya able on the first days of November and May in each year.
On the same day that McCarty got his deed, he conveyed the property to Kirk, Johnston and Copland, and they under an agreement made by McCarty with Edward N. Rogers and John A. Stimler, for a iarge advance, conveyed the property to them, by deed dated the twenty-fourth of September, eighteen hundred and thirty-six.
Since the last deed, Edward N. Rogers and John A. Stimler have conveyed to Archibald G-. Rogers, who has also conveyed to Nehemiah Rogers, in whom the equity of Redemption now resides.
*145 The bill is filed for the foreclosure and sale of these premises, under the mortgage made by McCarty to the complainant.
A deeree pro confesso was taken against McCarty and wife, Edward N. Rogers and Stimler.
Archibald Rogers and Nehemiah Rogers have filed separate answers, upon which the cause has been put at issue, and depositions taken.
The first ground of defence set up, is that the transaction ie usurious, and the bond and mortgage therefore void. It is nol pretended that the first contract, made by the complainant with McCarty, was thus tainted, but Eugene McCarty, a son of Johi McCarty, is brought as a witness, wdio testifies that in the spring of eighteen hundred and thirty-six, between the time of executing the agreement by his father with the complainant, and the time of consummating it by giving the deed and taking the bond and mortgage, he went wdth his father to the complainant’s, about dark, and his father went in and called the complainant out, and told him he could do nothing with the pro perty, unless he would give him five years to pay the money and complainant agreed to do so, provided he was paid two oi three thousand dollars before the bond was given, if he could remain on the land free of rent, during the period the payment had to run. The witness says he stood outside the yard, close to the fence; that complainant and his father came up to him while the conversation on this subject was going on between them, and after hearing this, he stepped aside, leaving them still in conversation. The usury consists in the agreement, by which the complainant, for enlarging the time of payment, stipulated not only for his regular interest, but in addition for the posses sion of the premises.
Without entering into the question, how far, under the pecu liar circumstances of this case, the complainant’s remaining in possession free of rent, would make the transaction usurious, it appears to me dangerous ground, to defeat an agreement already reduced to writing, under the hands and seals of the parties, by so loose a conversation as this. The witness does not appear to *146 have heard either the commencement or the close of it, and cannot, therefore, be relied on for the whole story. Bnt it is a sufficient answer to this evidence, that if it be all true as stated that these parties did, at the time referred to, agree to this ar rangement, certain it is that it was no part of the original agreement, entered into in writing, on the twenty-fifth of February eighteen hundred and thirty-six, for the sale of the farm; nor was it carried out at the time the deed was given and the bond and mortgage executed, on the twenty-seventh of April, eighteen hundred and thirty-six. The papers are executed according tc the terms of the written agreement; the terms for payment are not fixed at five years, but in the manner called for by the ori ginal contract; nor is there any stipulation whatever made for che possession; the original agreement is the one carried into affect between the parties, and not the one referred to by the witness. I am, therefore, clearly of opinion, that the evidence fails to establish a case of usury, and that it can constitute no defence against this bond and mortgage.
The next point taken, arises from the object the purchasers had in buying this property. They intended to set it off in building lots, and Edward N. Rogers, who had agreed in his purchase with McCarty, for five years for the payment of the money, after getting his deed, learned for the first time, from the complainant, that the bond and mortgage were payable at an earlier day; he expressed his surprise, and told the complainant that he should look to McCarty and those concerned with him, to make good their agreement; when the complainant told the witness that he did not believe there would be any difficulty, a a his great object was to get his interest; that the witness thereupon told complainant he would think over the subject and make him a proposition. The witness then says, that the same afternoon he called on the complainant, and told him he would make this agreement with him — that if he would extend the time of payment of the bond five years from the twenty-seventh of April ensuing its date, making six years in all, and release the lots that deponent and Stimler should sell, from the *147 lien of the mortgage, (provided sncli release did not exceed one fourth of the property,) on his being paid for the property thus released, or having the bonds and mortgages given for theii purchase money assigned to him, that complainant might re tain the possession of the residue of the farm free of rent, anc that no claim would be made for rent for the time he had al ready occupied it. This proposition, he says, was agreed to by the complainant.
The evidence then proceeds to show that the complainant is guilty of a bi*each of this agreement; and it is insisted by the answer, that the defendant, Nehemiah Eogers, is entitled, before the complainant can have his decree in this cause, to a ■specific performance of the complainant’s agreement to release Lots as they should be sold on the premises, or to have his damages for such breach of his agreement, set off against the amount of the bond and mortgage.
This is taking a wide range, and involving in a case of foreclosure of a mortgage, a great variety of matters and endless litigation. If this defence should be sustained, I see no limit on a bill of foreclosure, to settling before decree every agreement and controversy respecting the land between the complainant and all the intermediate owners down to and including the present, and that too, whether the mortgage has any connection with them or not. This agreement is not made with the mortgagor, but with Edward N. Eogers, an intermediate owner, and is declared to have been entered into long after the mortgage was made, and for purposes connected with the property, growing out of the manner in which sales were proposed to be made. The defendant must in my opinion, be left on this agreement, to his remedy at law. The complainant is able to refund in damages as it is stated, for any amount in which he may be justly chargeable, and there is no safe mode in this court, of settling questions of this character; it is properly a case for a jury to assess the damages, and not for investigation before this court. The evidence would lead me to believe that the complainant has not regarded, as he should have done, the position *148 of men who had purchased property at so expensive a rate,, and who had no way of remunerating themselves but by selling off lots; still, I do not see how the defendant can avail himself of such a defence in this action. Can this court decree a specific performance against the complainant of his agreement, in this action ? There is no precedent for such a course of practice, and to attempt to settle the damages incident to a breach of such an agreement, would be equally against the course of procedure. I am, therefore, of opinion, that this defence cannot avail the defendant in this action.
The last objection is, that the time of payment for the principal was extended by the complainant, for five years from, the .twenty-seventh of April, eighteen hundred and thirty seven, and the bond andmortgage will of course not be due until the twenty-seventh of April, eighteen hundred and forty two. This is clearly established, from the evidence, and the defendant is entitled to this time, before payment can be demanded. Edward N„ Rogers expressly so swears, and the whole evidence, as well as the statement in the complainant’s bill, go to show such an understanding. It is well settled, that the time for payment may be extended by parol: Chitty on Contracts, 27, in note; 1 John. Cases, 23; 3 John. 528; 2 Wendell, 587; 14 John. 330; 1 Green, 165; Saxton, 280.
There must, therefore, be a reference to a master, to ascertain and report the amount due the complainant for interest on the bond and mortgage, after deducting a fair compensation for the use and occupation of the farm; and also, whether a part of the premises can be sold without material injury to the rest. The justice of this ease, as far as I am able to reach it in this suit, as it appears to me, is, to consider the time of payment for the principal of the bond enlarged to the twenty seventh of April next, leaving the interest payablehalf yearly. The contract made for complainant’s enjoying the possession free of rent, is part of the one for releasing a portion of the. lands, subsequently made with Mr. Rogers, and must be settled with that.
Decree accordingly, and reference to a roaster.
Cited in Stryker v. Vanderbilt, 1 Dutch, 505; Tompkins v. Tompkins, 6 C.E. Gr. 339.